# EXHIBIT A

TWENTY-FIRST JUDICIAL DISTRICT COURT

PARISH OF TANGIPAHOA

STATE OF LOUISIANA

NO. 2021-0000685                                                     DIVISION: A

RANDY DENNING, ET AL.

VERSUS

BOND PHARMACY, INC. d/b/a/ ADVANCED INFUSION CARE,
ADVANCED INFUSION SOLUTIONS, and AIS HEALTHCARE

FILED_____     _____
                                                   DEPUTY CLERK

## PETITION FOR DAMAGES AND CLASS ACTION

Made Petitioner herein is Plaintiff, Randy Denning, a person of the full age of majority, who brings this action individually and on behalf of a class of similarly situated Louisiana residents, and alleges as follows:

1.

Plaintiff, is a resident and domiciliary of and resident of the Parish of Tangipahoa, State of Louisiana, and is and was a patient of a Louisiana healthcare provider who is providing treatment to her which includes prescribing and administering certain prescribed medication for treatment of chronic pain.

2.

Defendant is Bond Pharmacy, Inc. d/b/a/ Advanced Infusion Care, Advanced Infusion Solutions, and AIS Healthcare ("AIS"), is a Mississippi corporation, whose business address is 623 Highland Colony Parkway, Suite 100, Ridgeland, MS 39157, and whose principal place of business is, upon information and belief, 18451 Dallas Parkway, Suite 150, Dallas, TX 75287.

3.

This Court has jurisdiction over this action, as this defendant is doing business and has done business in the State of Louisiana and has sufficient contacts with the State of Louisiana to meet due process requirements, among other things, it: (1) has transacted business in this state; (2) has contracted to supply services or things in this state; and/or (3) has caused injury or damage by an offense or quasi offense committed through an act or omission in this state.

1



4.

Venue is proper in Tangipahoa Parish, Louisiana, pursuant to La. Code of Civ. Proc. Article 593.

5.

In connection with Plaintiff's treatment for pain by her healthcare provider, beginning on or about October of 2019, Plaintiff's physician/healthcare provider retained the services of defendant AIS to provide pharmaceuticals and/or medical equipment as needed for an intrathecal pain pump prescribed for Plaintiff.

6.

AIS holds itself out as a compounding pharmacy which also provides pharmaceuticals, nursing staff providing patient-specific care services for in-home infusion therapy for pain management, and medical supplies including pump refills and maintenance.

7.

At all times material hereto Plaintiff avers that the only service for which her healthcare provider retained AIS was to fill and/or refill and ship prescriptions for intrathecal drug pain pumps.

8.

On or about October 2019 in connection with the services AIS was to provide to Plaintiff's healthcare provider, AIS required Plaintiff to execute a form "Consent/Authorization for Treatment", Exhibit 1, attached, which specifically sets forth that: (1) AIS was providing only prescription medication pursuant to the orders of Plaintiff's physician; (2) Plaintiff's physician or his/her staff was responsible for the administration and/or supervision of administration of the pain medication supplied by AIS, and (3) AIS was to ship medication and equipment ordered by Plaintiff's physician to his/her office. Upon information and belief, this agreement was uniform and uniformly required of every patient whose physician utilized the services of AIS to fill/refill intrathecal pain pump prescriptions.

9.

AIS also required Plaintiff to sign a "Financial Responsibility/Assignment of Benefits/Release of Medical Information/NOPP and Patient Rights and Responsibilities Acknowledgment/Non-Assignment of Benefits" agreement, which was attached to and made a

part of the "Consent/Authorization for Treatment" (see Exhibit 1, p. 2), wherein Plaintiff acknowledged, among other things, that: (1) her healthcare insurer may be billed for services provided as authorized by Plaintiff's physician, (2) her health insurer may not provide coverage/payment for all services billed by AIS, and (3) Plaintiff would be responsible for payment for goods and services billed either personally and/or through an assignment of insurance benefits to AIS. Upon information and belief, this agreement was uniform and uniformly required of every patient whose physician utilized the services of AIS to fill/refill pain pump prescriptions.

10.

Plaintiff avers that the terms of the "Consent/Authorization for Treatment" agreement control and limit the scope of the "Financial Responsibility/Assignment of Benefits/Release of Medical Information/NOPP and Patient Rights and Responsibilities Acknowledgment/Non-Assignment of Benefits" agreement, insofar that AIS was not authorized to bill Plaintiff or her health insurer for services not covered under the terms of the "Consent/Authorization for Treatment" agreement. At all times material hereto, Plaintiff's treating physician was responsible for all services related to the administration and/or supervision of administration of the pain medication supplied by AIS for the Plaintiff.

11.

On or about February 2021 Plaintiff discovered that AIS was billing her health insurer, Gilsbar Group Benefits, L.L.C., among other things a per diem amount of $120.00 for services which were not provided by AIS, specifically charges related to the administration and/or supervision of administration of the pain medication supplied by AIS.

12.

Plaintiff discovered that AIS was billing her health insurer for these services under certain Healthcare Common Procedure Coding System codes for Home Infusion Therapy ("HIT") including: S9325, for "Home infusion therapy, pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment, (drugs and nursing visits coded separately), per diem;" S9326, for "Home infusion therapy, continuous (twenty-four hours or more) pain management infusion; administrative services, professional pharmacy services, care coordination and all necessary

3

supplies and equipment (drugs and nursing visits coded separately), per diem;" S9327 for "Home infusion therapy, intermittent (less than twenty-four hours) pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drugs and nursing visits coded separately), per diem;" and, S9328 for "Home infusion therapy, implanted pump pain management infusion; administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment (drugs and nursing visits coded separately), per diem."

13.

Neither Plaintiff nor her physician authorized AIS to perform services other than those set forth in the Consent/Authorization for Treatment, i.e.: the filling/refilling of Plaintiff's pain pump medication. Further, at all times material Plaintiff's treating physician was administering and/or supervising the administration of the pain medication supplied by AIS, for which Plaintiff's physician also was billing Plaintiff's health insurer.

14.

Upon information and belief, in order for AIS to bill health insurers at for services or equipment under one of the "S codes" for ongoing services, such as: medical supervision, nursing, patient or care giver training, and patient support, AIS was required to provide certain documentation supporting its claim for payment.

15.

Upon information and belief, billing requirements for all HIT services would have required that AIS obtain certain documentation which would include a signed and dated certificate of medical necessity for each therapy category billed, including *inter alia* one or more of the following: the prescribing physician's name, address and telephone number; the patient's full name, address, gender and birth date; a detailed diagnosis related to the infusion therapy using standard billing guidelines; a description of the patient's condition, detailed enough to substantiate the necessity of services or items; dosage, infusion time, fluids, frequency, and duration (start and stop dates of medication); type or route of infusion administration, required equipment and supplies; estimated date of duration of need and frequency of use; nursing orders; and, a physician's signature and date.

16.

4

Plaintiff submits that AIS was using the "S codes" to submit claims to health insurers in Louisiana in instances where AIS was selling only the HIT pharmaceutical component to providers in Louisiana (and submitting claims to health insurers for that pharmaceutical component) but allowing those Louisiana providers to oversee administration of the drug and otherwise manage the patient's care related to the pain medication therapy.

17.

In other words, despite submitting claims to Louisiana patients' health insurers using the above referenced S codes (in addition to the pharmaceutical code), AIS was not providing ongoing services such as medical supervision, nursing, patient or care giver training, or patient support.

18.

Upon information and belief, when submitting claims for HIT services, AIS also should have submitted documentation detailing the total number of days the patient infused for the therapy because "S Codes" are quantity-processed or quantity-paid, meaning the insurer pays them as many times as AIS indicates they were performed.

19.

Further, Plaintiff avers that the S code per-diem is payable only on days when the patient is receiving actual infusion of medications through intravenous or other authorized drug delivery routes of home infusion therapies.

20.

Plaintiff further avers that AIS submitted claims to her health insurer for per diem billing codes on days when she did not receive an actual infusion of medications through intravenous or other authorized drug delivery routes of home infusion therapies.

21.

Plaintiff further avers that AIS did not and cannot provide any documentation or other evidence supporting the provision of ongoing services such as patient care coordination, pharmacy consulting, or supplies for which it billed Plaintiff's health insurer.

22.

Plaintiff has since alerted Plaintiff's health care insurer of AIS's improper billing for services not provided to Plaintiff. In total to date Plaintiff and her insurer have been billed

5

thousands of dollars for claims billed under S codes allowing for per diem billing and/or for medical supervision, nursing, patient or care giver training, patient support, and other items other than the pharmaceutical component, the only item for which Plaintiff was obligated under the terms of the agreements with AIS.

23.

### BREACH OF CONTRACT

a. Plaintiff re-alleges all prior paragraphs of the Petition as if set out here in full.

b. There existed between Plaintiff and defendant, AIS, a contract for the filling and/or refilling of prescribed pain medication as ordered by his/her treating physician and to be administered by her treating physician through a targeted drug delivery system.

c. AIS breached the terms of its "Consent/Authorization for Treatment" agreement with Plaintiff by billing for services neither agreed to, ordered, or authorized by Plaintiff or Plaintiffs' treating physician.

d. As a consequence of AIS's actions, causing Plaintiff and/or Plaintiff's health insurer to pay wrongfully pay for claims/services, AIS has caused Plaintiff damages.

e. Wherefore Plaintiff respectfully requests that this Honorable Court enter judgment as to Plaintiff's Breach of Contract claim in her favor and against AIS in an amount sufficient to compensate Plaintiff for her actual losses, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just and equitable.

24.

### UNJUST ENRICHMENT

a. Plaintiff re-alleges all prior paragraphs of the Petition as if set out here in full.

b. Alternatively, Plaintiff's claims for restitution of amounts collected by AIS through its improper practices also sound in quasi-contract under La. Civ. Code article 2299 since the patrimony of Plaintiff has been depleted where payment by Plaintiff's health insurer was made.

c. As a consequence of AIS's billing Plaintiff and/or Plaintiff's health insurer for services not rendered, Plaintiff's patrimony has been depleted where Plaintiff either personally has paid for those services and, where Plaintiff's insurer has paid for those services, the amount of insurance coverage available to Plaintiff for a particular term has/had been improperly depleted

6

through AIS's actions.

d.   Plaintiff's right to demand the return of the thing or the value thereof is prevention of the unjust enrichment which would otherwise accrue in favor of a transgressor, AIS, by virtue of its receipt and permanent retention of a thing of value belonging to the aggrieved party.

e.   Under such circumstances where the object received and retained is capable of restoration, equity demands its return, therefore Plaintiff seeks restitution of sums wrongfully billed and received by AIS based upon the existence of a quasi contractual obligation on the part of AIS which received the payments.

f.   Wherefore Plaintiff respectfully requests that this Honorable Court enter judgment as to Plaintiff's claim for Restitution of Amounts Collected Under La. Civil Code Art. 2299 in her favor and against AIS in an amount sufficient to compensate Plaintiff for her losses, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just and equitable.

25.

**FRAUD/INTENTIONAL MISREPRESENTATION**

a.   Plaintiff re-alleges all prior paragraphs of the Petition as if set out here in full.

b.   Plaintiff entered into an agreement with AIS in which Plaintiff agreed to be financially responsible only for the services set forth therein, the filling/refilling of pain medication as ordered by his/her physician.

c.   AIS misrepresented and/or omitted in the agreement that it intended to actually bill Plaintiff and/or Plaintiff's health insurer for more expansive services enumerated under certain billing codes for "home infusion therapy" which it in fact did not provide, but were services actually provided by the treating physician.

d.   Plaintiff avers that AIS was aware that by representing to Plaintiff that prescribed pain medication as ordered by his/her treating physician was the only service to be provided by AIS, and that the pain medication would be administered by her treating physician, that this would substantially influence Plaintiff's consent since the responsibilities of AIS and the physician would be clearly defined and expectations as to what additional financial obligations Plaintiff was agreeing to undertake as part of the agreement would be limited to those related to drug prescription refills.

7

e.   Plaintiff further avers that by having Plaintiff sign the subject agreements (Exhibit 1), AIS intended to obtain an unjust advantage, securing consent to bill Plaintiff and/or Plaintiff's health insurer for services included under medical billing codes unknown to Plaintiff and not actually provided by AIS.

f.   Plaintiff would not have entered into the agreement with AIS had she known that AIS would seek to bill for services other than the filling/refilling of pain medication as ordered by Plaintiff's physician.

g.   Plaintiff would not have entered into the agreement with AIS had she known that AIS would seek to bill for services which were specifically reserved to and performed by Plaintiff's physician and for which service Plaintiff understood her physician would bill.

h.   As a result of AIS's actions, Plaintiff has improperly and fraudulently been billed for services not provided by AIS but which actually have been provided by Plaintiff's treating physician.

i.   Plaintiff avers that AIS's actions were intentional and the product of malicious, dishonest, wilful and/or fraudulent motivations.

j.   As a consequence of AIS's bad faith in the performance and/or failure to perform under the agreement with Plaintiff, AIS is liable for all the damages, foreseeable or not, that are a direct consequence of AIS' performance and/or failure to perform, pursuant to La. Civ. Code art. 1997. Such damages may include mental anguish, impairment of obligations, impairment to credit, among other damages/amounts deemed equitable.

k.   Wherefore Plaintiff respectfully requests that this Honorable Court enter judgment as to Plaintiff's claim for Fraudulent/Intentional Misrepresentation in her favor and against AIS in an amount sufficient to compensate Plaintiff for her actual losses, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just and equitable.

26.

Plaintiff avers that in addition to compensatory damages, and such other relief afforded by law and equity, she, and the members of this putative class are entitled to exemplary or punitive damages in connection with their claims against AIS as set forth herein:

a.   Pursuant to La. Civ. Code Article 3546, punitive damages may be awarded by Louisiana courts when two of the following three are present: (1) punitive damages are authorized by the

ORIGINAL

law of the state where the injurious conduct occurred, (2) punitives are authorized by the law of the state where the injury occurred, (3) punitives are authorized by the law of the place where the person who caused the injury was domiciled. Plaintiff avers that most of the significant injurious conduct, the fraudulent billing practices, occurred in the state or states in which defendant AIS was domiciled, Mississippi or, alternatively, Texas.

b. A party's domicile shall be determined according to Articles 3518 and 3548 of the Louisiana Civil Code. Under Article 3518 a juridical person, such as AIS, may be treated as a domiciliary of either the state of its formation (Mississippi) or the state of its principal place of business (Texas), whichever is most pertinent to the particular issue. Under Article 3548, the principles of La. Civ. Code 3542 govern whether or not a non-domiciliary juridical person will be treated as a domiciliary of this state.

c. The causes of action alleged in this matter sound in breach of contract, quasi-contract, unjust enrichment, fraud, intentional misrepresentation, all pursuant to a common practice or scheme initiated and conducted by AIS at the corporate level, where the injurious decisions regarding the creation of the alleged fraudulent billing practices/scheme were made and implemented state-wide as to all class members.

d. Upon information and belief AIS is incorporated in the State of Mississippi but maintains Texas as its principal place of business.

e. Further, upon information and belief the billing operations of the company would have been conducted out of either the company's place of incorporation (Mississippi) or its principle place of business location (Texas).

f. The relationship between Plaintiff and defendant was centered on the agreement signed, which contemplated only the filling of pain medication prescribed for her intrathecal pain pump by her physician, however, the injurious conduct, the improper billing for services and things not rendered or provided, occurred through AIS's corporate office(s) in Mississippi and/or Texas where bills directed to Plaintiff's insurer were generated, thus causing damage to Plaintiff and the class members in Louisiana.

g. AIS knew that its practices implicated interstate commerce and that those practices would cause harm to Plaintiff and the Louisiana class members all in violation of the laws of this state as well as those of Mississippi and Texas.

9

h.   In connection with the improper and fraudulent billing practices by AIS, it acted with malice and/or gross negligence evidencing a willful, wanton and/or reckless disregard for the rights and safety of others, and under those circumstances the law of the states of Mississippi and Texas provide for the award of punitive damages in addition to compensatory damages afforded under the causes of actions averred herein.

27.

This is a class action suit brought pursuant to La. Code of Civ. Proc. Articles 591, et seq. on behalf of all persons in the State of Louisiana whose treating physicians prescribed pain medication therapy through a targeted drug delivery therapy, which drug or pharmaceutical was provided by AIS to plaintiffs' treating physicians/healthcare providers, and which persons entered into the agreements identified in Exhibit 1 as a "Consent/Authorization for Treatment" and "Financial Responsibility/Assignment of Benefits/Release of Medical Information/NOPP and Patient Rights and Responsibilities Acknowledgment/Non-Assignment of Benefits," during a ten year period of time prior to the filing of this suit and who were billed, either personally or through their health insurance providers, for services neither performed nor identified in the referenced agreements, particularly any services other than the filling/refilling of pain medication as ordered by their treating physicians.

28.

The described class is so numerous, consisting of hundreds of Louisiana patients, that joinder of all members as plaintiffs is impractical.

29.

There are questions of law and fact common to all class members, which predominate over questions affecting only individual members. These common questions include whether the defendant's actions constituted contractual breaches and tortious misconduct under Louisiana law and whether defendant's conduct violated the rights of the plaintiffs under any Louisiana law.

30.

The claims of the named Plaintiff are typical of those of other class members, and the named Plaintiff will fairly and adequately insure and protect the interest of all members of the class. Plaintiff has engaged counsel who is experienced in class action litigation, and who is entirely capable of representing the class.

31.

The class action is superior to any alternative methods of adjudication. Plaintiffs' claims may be easily determined by referencing the explanation of benefits provided by health insurers or through invoices sent directly to plaintiffs by the defendant. Moreover, class members are numerous enough that joinder is impractical. A statewide class action is preferable as the referenced actions occurred in Louisiana pursuant to agreements executed in Louisiana and the plaintiffs' claims/causes of action arise under Louisiana law.

32.

A class action would be manageable. Common and predominate questions at to whether the defendant violated Louisiana law could be answered for all class members uniformly. The only individual questions would be the amount of compensatory and other damages due to each class member and, because of the uniformity of the harms suffered, could be readily determined.

33.

Plaintiffs' claims/causes of action arise under the laws of the State of Louisiana. Plaintiffs have suffered injuries and damages due to defendant's unlawful or wrongful action in violation of Louisiana law.

WHEREFORE, the premises considered, Plaintiff requests that the defendant be cited to appear and answer, and that upon final trial, this court enter judgment in favor of the Plaintiff, Randy Denning, and a class similarly situated for Louisiana patients and against the defendant, AIS Healthcare;

A. Certifying the instant action as a class action;

B. Requiring defendant to pay to plaintiff and all members of the class compensatory and punitive damages;

C. Requiring defendant to pay pre-judgment and post-judgment interest as allowed by law; and,

D. For any and all other such relief as law, equity, and the nature of the case may permit.

Respectfully submitted,

_____
TIMOTHY R. RICHARDSON, Bar No. 27625
Richardson Law Group
Timothy Richardson, Attorney at Law APLC
422 E. Lockwood Street, 2nd Floor
Covington, LA 70433
Ph:    (985) 898-0483
Email:  tim@rlgroup-law.com

11

AND

SIDNEY D. TORRES, III, Bar No. 12869

ROBERTA L. BURNS, Bar No. 14945
BEAU F. CAMEL,  Bar No. 30231
Law Offices of Sidney D. Torres, III, APLC
8301 W. Judge Perez Dr., Suite 303
Chalmette, LA   70043
Ph:     (504) 271-8422
Fax:    (504) 271-1961
Email: storres@torres-law.com
Email: rburns@torres-law.com
Email: bcamel@torres-law.com

**PLEASE SERVE:**

Through Louisiana Long-Arm Service:

BOND PHARMACY, INC.,   d/b/a/ Advanced Infusion Care,
Advanced Infusion Solutions, and AIS Healthcare
Through its Registered Agent:
NATIONAL REGISTERED AGENTS INC
645 Lakeland East Drive, Suite 101
Flowood,  MS 39232