UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDY DENNING, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-774** |
| **BOND PHARMACY, INC. D/B/A ADVANCED INFUSION CARE, ADVANCED INFUSION SOLUTIONS, AND AIS HEALTHCARE** | **SECTION "H"** |

### REASONS

Before the Court is the Motion to Dismiss Plaintiff's Petition or Strike Class Action Allegations (Doc. 5), filed by Defendant Bond Pharmacy, Inc. d/b/a Advanced Infusion Care, Advanced Infusion Solutions, and AIS Healthcare ("Defendant"). On August 18, 2021, the Court entered an Order granting this Motion and dismissing the above matter with prejudice, with reasons to follow (Doc. 43). The Court now enters the following reasons.

### BACKGROUND

This suit arises out of Defendant's alleged fraudulent billing of Plaintiff Randy Denning's healthcare insurer. Beginning around October 2019, Plaintiff

began receiving outpatient treatment for chronic pain using drugs administered through an intrathecal pain pump. Plaintiff's healthcare provider retained Defendant, a compounding pharmacy that specializes in home infusion therapies, to provide Plaintiff with pharmaceuticals and medical equipment as needed for use of the pain pump. On October 22, 2019, Plaintiff signed two agreements with Defendant, one authorizing Defendant to provide services to Plaintiff pursuant to orders from her physician.[1] The other document contained an assignment to Defendant of insurance benefits payable for products or services provided by Defendant, as well as some provisions confirming Plaintiff's financial responsibility in the event services were not covered.[2] Neither Plaintiff nor her physician authorized Defendant to perform services other than the filling, refilling, and shipping of Plaintiff's pain pump medication.

In February 2021, Plaintiff discovered that Defendant was allegedly billing her insurer, Gilsbar Group Benefits, LLC, for services not provided at a rate of $120 per day. Specifically, Plaintiff alleges that Defendant was billing under a number of healthcare codes for home infusion therapy and other services that were neither performed nor authorized by Plaintiff's physician. On March 11, 2021, Plaintiff filed her Petition for Damages and Class Action against Defendant, alleging breach of contract, unjust enrichment, fraud, and intentional misrepresentation.

---

[1] Doc. 1, Exh. B, "Consent/Authorization for Treatment."
[2] Doc. 1, Exh. B, "Financial Responsibility/Assignment of Benefits/Release of Medical Information/NOPP and Patient Rights & Responsibilities Acknowledgment."

Invoking diversity jurisdiction, Defendant removed the suit to this Court on April 16, 2021. Soon after, Defendant filed this Motion to Dismiss Plaintiff's Petition or Strike Class Action, arguing that the case should be dismissed under 12(b)(1) for lack of standing and, in the alternative, that the claims for unjust enrichment and fraud should be dismissed under 12(b)(6). Defendant also asks the Court to strike Plaintiff's class allegations.

**LEGAL STANDARD**

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[3] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[4] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[5]

If at any time the court determines that it lacks subject matter jurisdiction, the court must dismiss the action.[6] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or

---

[3] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).
[4] Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001).
[5] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).
[6] FED. R. CIV. PROC. 12(h)(3).

constitutional power to adjudicate the case."[7] As a prerequisite to jurisdiction, the U.S. Constitution requires, at a minimum, that a case present an actual "case or controversy" as defined by Article III.[8] Standing is one aspect of this constitutional requirement,[9] so a lack of standing deprives the court of subject matter jurisdiction.[10] The party seeking to invoke federal jurisdiction has the burden of establishing standing.[11]

## LAW AND ANALYSIS

Defendant argues that Plaintiff lacks Article III standing to sue for allegedly fraudulent claims billed to her insurer because she has suffered no injury in fact as a result. Defendant argues that Plaintiff does not allege that she paid any of the billed claims, that Defendant initiated collection proceedings against her for unpaid claims, or that Defendant threatened to take such actions.

In response, Plaintiff avers that she and her insurer have been billed thousands of dollars for services not rendered. She concedes that she has suffered no direct economic loss or financial impact from those bills, but contends that she was responsible for any amounts not paid by her insurer. Plaintiff avers that Defendant's alleged breach of contract was a sufficient

---

[7] Krim v. pcOrder.com, Inc., 402 F.3d 489,494 (5th Cir. 2005) (quoting Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[8] *See* U.S. CONST. art. III, § 2; Flast v. Cohen, 392 U.S. 83, 94–95 (1968).
[9] Lang v. French, 154 F.3d 217, 222 n.28 (5th Cir. 1998).
[10] Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC), 540 F.3d 351, 354–55 n.1 (5th Cir. 2008).
[11] *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Grant v. Gilbert, 324 F.3d 383, 387 (5th Cir. 2003).

injury in fact and argues that "[a] party to a contract undoubtedly has standing to file a suit for breach of that contract."[12]

Standing under Article III requires plaintiffs to "demonstrate a 'personal stake' in the suit."[13] To establish such a personal stake for purposes of Article III, a plaintiff must show three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood, as opposed to mere speculation, that a favorable decision will redress the injury.[14] "[W]hen considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."[15]

Plaintiff executed two contracts with Defendant, one entitled "Consent/Authorization for Treatment" and another called "Financial Responsibility/Assignment of Benefits/Release of Medical Information/NOPP and Patient Rights & Responsibilities Acknowledgment."[16] The first contract authorized Defendant to provide services to Plaintiff pursuant to her physician's orders, and the second contract assigned to Defendant the benefits of Plaintiff's insurance coverage over services rendered by Defendant. Importantly, Plaintiff's physician authorized Defendant to provide prescribed medication, which it did, and Plaintiff does not allege otherwise. Instead, she

---

[12] Doc. 13 at 3.
[13] Camreta v. Greene, 563 U.S. 692, 701 (2011) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009)
[14] *Lujan*, 504 U.S. at 560–61 (internal quotations omitted).
[15] N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 191 (5th Cir. 2015) (quoting Cole v. Gen. Motors Corp., 484 F.3d 717, 723 (5th Cir. 2007)) (internal quotations omitted).
[16] Doc. 1, Exh. B.

alleges that Defendant breached the contract "by billing for services neither agreed to, ordered, or authorized by Plaintiff or Plaintiffs' [sic] treating physician."[17] Thus, the alleged breach of contract that forms the basis of this claim came in the form of the allegedly fraudulent billing of Plaintiff's insurer. While Plaintiff alleges that her insurer was fraudulently billed, Plaintiff has not alleged that these fraudulent bills injured her financially or in any other way.

While there may be occasions when a breach of contract creates standing for Article III purposes, that is not always the case.[18] The first element of

---

[17] Doc. 1-1, ¶ 23c.

[18] Courts in other circuits are wrestling with the question of whether a breach of contract alone, without any further harm or injury, constitutes an injury in fact for standing purposes. For example, in *Dinerstein v. Google, LLC*, the court concluded, "The weight of authority supports the conclusion that Mr. Dinerstein's allegation that the University breached an express contract is sufficient for Article III standing purposes." 484 F. Supp. 3d 561, 574 (N.D. Ill. 2020). *But see* Aldrich v. Nat'l Collegiate Athletic Ass'n, No. 1:20-cv-02310, 2021 WL 4477769, at *4 (S.D. Ind. Sept. 30, 2021) ("Plaintiffs say that the Court should do as the Northern District of Illinois did in *Dinerstein v. Google* and find standing when a complaint sufficiently alleges a breach of contract. This is a novel argument that is still percolating in Seventh Circuit courts.") (citations omitted); Case v. Miami Beach Healthcare Grp., Ltd., 166 F. Supp. 3d 1315, 1318–20 (S.D. Fla. 2016) (holding that plaintiff did not have standing even though she alleged that the defendants "breached their contractual obligation to protect her sensitive information").

The Fifth Circuit has not directly addressed this question, but another section of this Court provided an opinion that is instructive, if only marginally. In *Green v. eBay Inc.*, the Court considered standing in the context of a data breach that allegedly caused increased risk of future identity theft or fraud, though no misuse of the data had occurred by the time the suit was filed. No. 14-1688, 2015 WL 2066531 (E.D. La. 2015) (Morgan, J.) The plaintiff brought a variety of claims against eBay, one of which was breach of contract for violating the privacy policy entered into by the parties. The Court eventually determined that the plaintiff failed to allege an injury in fact because the mere risk of identity theft was insufficient and the injury could not manifest without some decision from a third party. And while the plaintiff did not argue that the breach of the privacy policy alone could

6

standing is not simply whether a party has suffered any violation of legal rights; it is whether there has been a concrete and particular injury in fact.[19] The Supreme Court has made it clear that a legal violation alone does not suffice for standing: "Article III standing requires a concrete injury even in the context of a statutory violation."[20] "Contracts have the effect of law for the parties" in Louisiana,[21] so it stands to reason that Article III requires a concrete injury even in the context of a contractual violation.[22]

Caselaw supports this position. In *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodaux*, Inc., the Fifth Circuit specifically noted that the Plaintiff had "alleged that it suffered an injury-in-fact, $1.5 million in damages that was caused by John Deere's alleged breach of contract, and, should it prove its case on the merits, its injury would be redressable by the district court."[23] Given these allegations, the court concluded, "The requirements of Article III standing are satisfied."[24] It appears, then, that Article III standing

---

support standing, the analysis of standing is jurisdictional, so arguably the Court could have concluded that the plaintiff had standing at least with respect to the breach-of-contract claim despite the silence of the parties on this point. Instead, the Court considered the alleged consequences of the breach of contract and found them inadequate to support standing. That analysis weighs in favor of the position that breach alone is an insufficient injury in fact.

[19] Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized.").

[20] *Id.* at 1549.

[21] LA. CIV. CODE art. 1983.

[22] *See, e.g.*, F. Andrew Hessick, *Standing and Contracts*, 89 GEO. WASH. L. REV. 298 (2021)

[23] Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 800 (5th Cir. 2012)

[24] *Id.*

7

requires a concrete injury to plaintiff such that a breach of contract alone is an insufficient injury in fact.[25]

The Court, however, need not reach that conclusion because Plaintiff cannot satisfy the redressability prong of Article III standing. She has not alleged that she sustained any direct or concrete loss that can be redressed in this case. Plaintiff argues that she seeks "compensatory and punitive damages."[26] If Plaintiff has not suffered any concrete losses, however, there is nothing to compensate. In this same vein, Defendant argues that there is no substantial likelihood that "the requested relief will redress the alleged injury," as required by Article III.[27] Plaintiff responds, "The only way to redress these injuries is through this action, individually and on behalf of the putative class, to stop defendant's conduct and disgorge it of the insurance proceeds paid."[28] Forcing Defendant to disgorge funds paid by the insurer could arguably redress the insurer's injury, but not Plaintiff's.

Furthermore, the cases that Plaintiff cites in support of her standing arguments are easily distinguishable. In *Morial v. U.S. Department of Housing and Urban Development*, the Court determined that plaintiffs had

---

[25] *See, e.g.*, Hochendoner v. Genzyme Corp., 823 F.3d 724 (1st Cir. 2016) (finding no standing for plaintiffs to assert breach-of-contract and other claims against a drug manufacturer when they could not provide enough information about the specific harm that each had experienced); Thompson v. Love's Travel Stops & Country Stores, Inc., 748 Fed. Appx. 6, 8–11 (6th Cir. 2018) (finding no standing to bring claim for breach of implied-in-fact contract, among others, where there was no allegation of concrete injury).

[26] Doc. 1-1.

[27] Aransas Project v. Shaw, 775 F.3d 641, 648 (5th Cir. 2014) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)) (internal quotations omitted).

[28] Doc. 13 at 9.

8

standing as third-party beneficiaries to a contract but also noted the benefits that the plaintiff were to be deprived of through breach of the contract at issue.[29] Here, Plaintiff has alleged no deprivation of benefits. Next, *North Cypress Medical Center Operating Co. v. Cigna Healthcare* is inapposite for a similar reason.[30] In that case, patients contracted for insurance coverage over treatment at an out-of-network hospital and then directed that payments from the insurer be made to the hospital.[31] The insurer never made those payments, and the Fifth Circuit held that the deprivation of what the patients contracted for was a concrete injury, despite the lack of out-of-pocket losses to the patients.[32]

Here, however, the basis of Plaintiff's claim is not that Defendant failed to provide her prescribed treatment. The Petition alleges that Defendant was only authorized to fill and refill her pain pump medication, which it did, and that the bills for *other* treatment services were unauthorized, unperformed, and therefore fraudulent.[33] Thus, when Plaintiff claims that the "failure to receive the contracted for service is a damage," she is mistaken. Her Petition states, "At all times material hereto Plaintiff avers that the only service for which her healthcare provider retained AIS was to fill and/or refill and ship prescriptions for intrathecal drug pain pumps."[34] There is no allegation that

---

[29] No. CIV.A. 01-3820, 2002 WL 246334, at *3 (E.D. La. Feb. 20, 2002).
[30] 781 F.3d 182 (5th Cir. 2015).
[31] *Id.* at 186–91.
[32] *Id.* at 194.
[33] Doc. 1-1, ¶¶ 7, 12, 13.
[34] Doc. 1-1, ¶ 7.

9

Plaintiff did not receive her prescribed medication as authorized by her health care provider.

Moreover, Plaintiff cannot allege an injury in fact from the mere possibility that Defendant may seek collection from her in the future. "Allegations of possible future injury do not satisfy the requirement of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact."[35] Plaintiff has given the Court no facts to support a reason to believe that collection of the billed amounts from her is certainly impending. In addition, Plaintiff cannot rely on Defendants demands for payment from her insurer—Plaintiff must be among the injured herself.[36] Ultimately, Plaintiff has not demonstrated sufficient injury in fact to support standing. The Court grants Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).

## CONCLUSION

For the foregoing reasons, Defendant's Motion (Doc. 5) is **GRANTED**.

New Orleans, Louisiana this 13th day of October, 2021.

*[signature]*

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[35] Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979) (internal quotation marks omitted).
[36] McMahon v. Fenves, 946 F.3d 266, 270 (5th Cir. 2020).